## UNITED STATES *v.* BANK OF NEW YORK & TRUST CO.*

No. 195. Argued December 18, 1935.—Decided January 6, 1936.

---

* Together with No. 196, *United States* v. *President and Directors of the Manhattan Co.,* and No. 197, *United States* v. *Louis H. Pink.* Both cases were on writs of certiorari to the Circuit Court of Appeals for the Second Circuit. In No. 197, Mr. Louis H. Pink, Superintendent of Insurance of New York, was substituted by an order of the court below for his predecessor in office, Mr. George S. Van Schaick, the original defendant in that case.

464

466

*Mr. David E. Hudson,* with whom *Solicitor General Reed, Assistant Attorney General Morris,* and *Messrs. Paul A. Sweeney, M. Leo Looney, Jr.,* and *Alanson W. Willcox* were on the brief, for the United States.

*Messrs. Frederick B. Campbell* and *Samson Selig* argued the cause, and *Mr. Campbell,* with *Messrs. Paul C. Whipp* and *Lounsbury D. Bates,* filed a brief, for the Bank of New York & Trust Co., respondent in No. 195.

*Mr. Hartwell Cabell,* with whom *Mr. Milton B. Ignatius* was on the brief, for Assecuranz Union von 1865, intervener-respondent in No. 195.

*Mr. Robert J. Sykes,* with whom *Mr. E. W. McMahon* was on the brief, for the President and Directors of the Manhattan Co., respondent in No. 196.

*Mr. John M. Downes,* with whom *Mr. Alfred L. Green* was on the brief, for Pink, Superintendent of Insurance of New York, respondent in No. 197.

By leave of Court, briefs of *amici curiae* were filed as follows: By *Mr. Borris M. Komar* in behalf of Samuel E. Morro et al.; by *Messrs. Joseph M. Proskauer, Philip A. Carroll, Otey McClellan,* and *J. Alvin Van Bergh,* in

behalf of The National City Bank of New York; by *Messrs. Samson Selig* and *Mr. William F. Roche;* and by *Mr. John W. Davis* in behalf of the Guaranty Trust Company of New York. These briefs all supported the contentions of respondents.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

The United States, claiming to be the owner of certain funds which originally had belonged to Russian insurance companies, brought these suits for accounting and delivery. The companies had made deposits with the Superintendent of Insurance of the State of New York in order to obtain authority to transact business within the State. The complaints alleged that in 1917, or 1918, the companies had been dissolved, and their properties had been "confiscated and appropriated," by decrees of the Russian State. The claim of the United States is based upon an assignment made by the Russian Government, on November 16, 1933, in connection with the recognition of that Government. Defendants hold the funds in question under orders and judgments of the state court in New York, providing for liquidation and distribution.

In each case, defendants moved to dismiss the complaint for insufficiency and, in opposition to complainant's motion for an interlocutory injunction restraining distribution, set up the proceedings of the state court. The District Court denied the motions for injunction and dismissed the complaints upon the grounds (1) that the Russian decrees, by reason of their confiscatory character, were ineffective to vest in the Russian Government the title to these funds situated in New York, and (2) that these funds were not covered by the assignment to the United States, 10 F. Supp. 269. The Circuit Court of Appeals held that the jurisdiction of the state court should be respected, and in that view affirmed the decrees of the Dis-

trict Court. 77 F. (2d) 866, 880, 881. Because of the nature and importance of the questions presented, we granted writs of certiorari, October 14, 1935.

The special facts of the three cases are these:

(1) The case against the Bank of New York and Trust Company (No. 195) relates to the deposit made by the Moscow Fire Insurance Company. By order of the Supreme Court of the State of New York, in 1925, the Superintendent of Insurance was appointed liquidator of the United States branch of the company pursuant to § 63 of the state insurance law and creditors were enjoined from pursuing their legal remedies against the assets so sequestered. The Superintendent of Insurance took possession of the assets and proceeded in the course of liquidation to satisfy the claims of domestic creditors and policyholders. There remained a substantial surplus.

Similar results followed the Superintendent's liquidation of the branches of other Russian companies, and the disposition of the surplus assets was brought before the Court of Appeals of New York. Creditors and policyholders with claims arising out of foreign business insisted that the time had come when their claims should be enforcible. The insurance companies insisted that they were still "juristic persons," that they were represented by boards of directors competent to act, and were entitled to possession subject to the remedies of creditors. The court declined to sustain the position of the Superintendent that the surplus should be left in his hands indefinitely,—until the recognition of a Russian government. As the Superintendent had fulfilled the statutory trust, the court considered it to be no part of his duty to ascertain the validity of the claims that would be paid out of the surplus "unless inequity would be done if the claimants were remitted to a remedy at law." Exceptions were recognized where attachments or executions had been levied before the date of liquidation and also where

472

proofs of claim had been filed and diligently pressed while the Superintendent was still in charge and the injunction was still in force. As the creditors so proving were acting in response to an invitation—published in accordance with the order of liquidation—to submit claims of every kind without reference to the place of origin, and were meanwhile stayed, the court thought that there would be manifest inequity if at that late day they were remitted to their legal remedies and compelled to prove anew. A court of equity having assumed control over a fund might continue to grant relief if justice so required. But the court took the view that after the liquidator had made provision for the payment of claims already filed, the surplus then remaining "should be paid to the corporations, represented by directors, a quorum of the board." *Matter of People (Russian Reinsurance Co.)*, 255 N. Y. 415, 420–424; 175 N. E. 114, 117.

The Moscow Fire Insurance Company, however, had been left with but one director; and although he might be treated as a "conservator" of the property of his company when there were assets within the State "that might otherwise be lost," the Court of Appeals was of the opinion that a measure of discretion should be exercised by a court of equity " before surrendering possession." Exercising that discretion the court directed that the delivery of the assets in the case of that company should be conditioned upon the execution of a bond to the People of the State in a sum equal to the value of the assets delivered, with a condition that the director should faithfully apply the assets to the use of the corporation, its creditors and shareholders. In the event of inability or failure to give the bond, the court directed that delivery should be made to a trust company "as agent or depositary" upon the stipulation of the insurance company and its "conservator" that the fund would "not be withdrawn except upon the order of a court of competent jurisdiction." *Matter of*

*People* (*Moscow Fire Insurance Co.*), 255 N. Y. 433, 435; 175 N. E. 120, 121. On the remittitur of the Court of Appeals, judgment was entered in the Supreme Court of the State on August 11, 1931, and provided, in the stated alternative, that the Superintendent should deliver the surplus assets to the Bank of New York and Trust Company. The Moscow Company and Paul Lucke, "its sole surviving director and conservator," took advantage of this alternative and gave the required stipulation, whereupon the Trust Company received the surplus assets, of about $1,000,000, on April 18, 1933.

Immediately—on April 19, 1933—the Moscow Company and Lucke brough suit in the Supreme Court of the State to determine the disposition of these assets, including the determination of the claims of creditors. A second suit was brought in June, 1933, by a shareholder of the Moscow Company. In October, 1933, the first of these suits was referred to a referee to hear and determine, and later the two suits were consolidated. Trial was had before the referee and proofs of claims of various creditors and shareholders of the Moscow Company were submitted. On August 13, 1934, when the referee was about to file his report, the United States Attorney presented to the referee a proof of claim of the United States to the entire fund,—based upon the assignment of November 16, 1933, by the Russian Government. Apparently the claim was not pressed and an understanding was reached that the referee would withhold his report until August 21, 1934, and that the United States would meanwhile determine in what manner it would assert its claim, whether by intervention in a proceeding in the state court or by suit in the federal court. The referee made no mention of the claim in his report, which was filed on August 22, 1934. Judgment was at once entered upon the report directing payment of the claims of creditors as allowed by the referee and, after making reservation for future claims

and expenses, ordering the distribution of the residue in liquidating dividends to the shareholders of the Moscow Company. There was also provision that any shareholder, or any party to the action, or successor in interest, might apply at the foot of the judgment for further directions. On the same day the United States brought the present suit.

(2) The case against the President and Directors of the Manhattan Company (No. 196) relates to the Northern Insurance Company of Moscow. Under an order of the state court, in 1926, the Superintendent of Insurance took possession of the assets of the United States branch of the company. The statutory liquidation was completed. But as the company was left with but two directors, provision was made in April, 1931—under the decision of the Court of Appeals of New York—for the delivery of the surplus assets to a trust company, in case the required bond was not given. *Matter of People (Northern Insurance Co.)*, 255 N. Y. 433, 435; 175 N. E. 120. In the following year an assignment for the benefit of creditors was made on behalf of the Northern Insurance Company to the Bank of Manhattan Trust Company, the predecessor in interest of the defendant in the present suit. Pursuant to a decision of the Court of Appeals on reargument (*Matter of People (Northern Insurance Co.)*, 262 N. Y. 453; 188 N. E. 17) judgment was entered, on June 6, 1933, in the Supreme Court of the State directing the Superintendent of Insurance to deliver the surplus assets to the Bank of Manhattan Trust Company "as agent or depositary" to be held subject to the order of a court of competent jurisdiction. The delivery was made, the amount being upwards of $245,000. On November 13, 1933, the state court directed the President and Directors of the Manhattan Company, as successor in interest, to transfer the fund to itself "as assignee for the benefit of creditors of the Northern Insur-

ance Company of Moscow." In July, 1934, the state court appointed a referee to take and state the account of the assignee, and to take proof and report as to the claims of creditors and those entitled to share in the disposition of the fund. That proceeding was in progress when the present suit by the United States was begun on August 25, 1934.

(3) The third case (No. 197) relates to the assets of the United States branch of the First Russian Insurance Company, which the state court, in 1925, placed in the hands of the Superintendent of Insurance as liquidator. This case differs from the others in that the Superintendent is still in possession. After the payment of domestic creditors, the surplus assets were retained by the Superintendent under the order of the state court for the purpose of satisfying valid claims founded upon foreign business, where proofs of claim had been filed with him during the statutory liquidation. *Matter of People (First Russian Insurance Co.)*, 255 N. Y. 415, 423; 175 N. E. 114. It appears that some of these foreign claims had been allowed by the liquidator and payments on account had been made under orders of the state court, and that other claims which the liquidator had disallowed were being heard before a referee appointed by the state court, when the United States brought the present suit on November 14, 1934. The Government states that the fund then held by the Superintendent amounted to over $1,000,000.

*First.* When the state court directed the Superintendent of Insurance to take possession of the assets of the United States branches, and to conserve those assets until its further order, the court took jurisdiction of the *res.* While the superintendent was a statutory liquidator, he took possesion under the direction of the court and the fund was at all times subject to the court's control. The proceeding was essentially one *in rem* and the Superintendent was protected by a sweeping injunction in the

unimpeded liquidation of the sequestered property. *Matter of People* (*Russian Reinsurance Co.*) *supra,* p. 420. Under § 63 of the state statute (Insurance Law; Cons. Laws, c. 28), the liquidator had rights and duties such as had previously "been exercised by and imposed upon ancillary receivers of foreign corporations." *Id.,* p. 424.

When the statutory trust was satisfied by the payment of domestic creditors and policyholders, it did not follow that the remaining assets were automatically released and the state court was *ipso facto* shorn of its jurisdiction. The court still had control of the property and necessarily had the pertinent equitable jurisdiction to decide what should be done with it. In such a case, the court might direct that the surplus assets should be remitted to a domiciliary receiver—if there were one—on appropriate conditions. *Matter of People* (*Norske Lloyd Insurance Co.*), 242 N. Y. 148; 151 N. E. 159. Or the court might direct further liquidation, in order to provide for the payment of other claims, if that course appealed to the sense of equity in the particular circumstances. *Matter of People* (*Russian Reinsurance Co.*), *supra,* p. 423. The latter action was taken and the Superintendent of Insurance was continued in possession of the assets subject to the control of the court. He was virtually its receiver for the purposes specified. In No. 197, the Superintendent still holds possession by virtue of that authorization and the *res* thus remains under the court's jurisdiction.

In the other two cases (Nos. 195 and 196) the Superintendent completed the additional liquidation and turned over the remaining assets to the designated depositaries. To safeguard all rights in the funds, they were not to be withdrawn from the depositaries except upon a court order. We need not pause to inquire as to the effect of that limitation, for, if jurisdiction was relinquished, it was soon resumed. On the very next day, in the case of the

Moscow Fire Insurance Company, suit was brought in its name, and by the sole surviving director and conservator, against the depositary and those alleged to be creditors and shareholders of the insurance company, to determine the disposition of the fund. Claims of creditors and shareholders were in course of adjudication in that proceeding when the present suit was brought. At that time, also, in the case of the Northern Insurance Company, the depositary—which had received an assignment for the benefit of creditors—was accounting in the state court for the fund in its hands and the claims of creditors and of those entitled to share in the fund were being heard.

In both these cases the proceedings in the state court were *quasi in rem.* Control of the funds was essential to the exercise of the court's jurisdiction to protect the rights of claimants. It was not necessary for the court to appoint receivers, as the funds were already in the hands of depositaries appointed by the court and subject to its direction. The principle, applicable to both federal and state courts, that the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other, is not restricted to cases where property has been actually seized under judicial process before a second suit is instituted. It applies as well where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature, where, to give effect to its jurisdiction, the court must control the property. *Farmers' Loan & Trust Co.* v. *Lake Street Elevated R. Co.,* 177 U. S. 51, 61. If the two suits are in rem or *quasi in rem,* so that the court must have possession or control of the *res* in order to proceed with the cause and to grant the relief sought, the jurisdiction of one court must of necessity yield to that of the other. *Penn General Casualty Co.* v. *Pennsylvania,* 294 U. S. 189, 195. This principle is applied in the discharge of the long recognized duty of this court to give effect to such

"methods of procedure as shall serve to conciliate the distinct and independent tribunals of the States and of the Union, so that they may coöperate as harmonious members of a judicial system coextensive with the United States." *Taylor* v. *Carryl,* 20 How. 583, 595. See also, *Peck* v. *Jenness,* 7 How. 612, 625; *Buck* v. *Colbath,* 3 Wall. 334, 341; *Wabash R. Co.* v. *Adelbert College,* 208 U. S. 38, 54; *Palmer* v. *Texas,* 212 U. S. 118, 129; *Lion Bonding Co.* v. *Karatz,* 262 U. S. 77, 89; *Harkin* v. *Brundage,* 276 U. S. 36, 43.

The Government urges that the present suits for an accounting are not suits *in rem* but *in personam;* and that to allow the federal court to pass upon the right asserted would not necessarily interfere with the jurisdiction or control by the state court over the *res.* See *Kline* v. *Burke Construction Co.,* 260 U. S. 226, 230. But these suits are not to enforce a personal liability but to obtain possession of the respective funds. The suits are not merely to establish a debt or a right to share in property, and thus to obtain an adjudication which might be had without disturbing the control of the state court. Compare *Waterman* v. *Canal-Louisiana Bank Co.,* 215 U. S. 33, 44–46; *Riehle* v. *Margolies,* 279 U. S. 218, 223, 224. Complainant demands that the depositaries account and pay over to the complainant, as "the sole and exclusive owner," the entire funds in their hands. Thus the object of the suits is to take the property from the depositaries and from the control of the state court, and to vest the property in the United States to the exclusion of all those whose claims are being adjudicated in the state proceedings.

The Government also insists that the courts of the State had lost jurisdiction of the funds, prior to the time when the present suits were begun, by reason of the fact that the funds were the property of the Russian Government which our Government had recognized. But, what-

ever the effect of recognition, it is manifest that it did not terminate the state proceedings. The state court still had control of the property and questions as to the rights of the parties who were before it, or of those who might come before it, were legal questions which the court had jurisdiction to decide.

*Second.* The fact that the complainant in these suits is the United States does not justify a departure from the rule which would otherwise be applicable. The Government invokes § 24 (1) of the Judicial Code (28 U. S. C. 41) which confers jurisdiction upon the District Court to entertain all suits of a civil nature brought by the United States. The Government insists that the United States is entitled to have its claim determined in its own courts. But the grant of jurisdiction to the District Court in suits brought by the United States does not purport to confer exclusive jurisdiction. It is a general rule that the grant of jurisdiction to one court does not, of itself, imply that the jurisdiction is to be exclusive. See *Gittings* v. *Crawford,* Taney's Dec. 1; *Ames* v. *Kansas,* 111 U. S. 449, 464; *Plaquemines Fruit Co.* v. *Henderson,* 170 U. S. 511, 517, 518; *Merryweather* v. *United States,* 12 F. (2d) 407, 409, 410. Upon the state courts, equally with the courts of the Union, rests the obligation to guard and enforce every right secured by the Constitution and laws of the United States whenever those rights are involved in any suit or proceedings before them. *Robb* v. *Connolly,* 111 U. S. 624, 637. In this instance it cannot be doubted that the United States is free to invoke the jurisdiction of the state court for the determination of its claim, and the decision of the state court of any federal question which may be presented upon such an invocation, may be reviewed by this Court and thus all the questions which the Government seeks to raise in these suits may be appropriately and finally decided. Jud. Code, § 237, 28 U. S. C. 344.

The statutory grant of jurisdiction to the District Court leaves open the question of the propriety of its exercise in particular circumstances. Even where the District Court has acquired jurisdiction prior to state proceedings, the character and adequacy of the latter proceedings in relation to the administration of assets within the State, and the status of those assets, may require in the proper exercise of the discretion of the federal court that jurisdiction should be relinquished in favor of the state administration. *Pennsylvania* v. *Williams,* 294 U. S. 176, 185; *Gordon* v. *Ominsky,* 294 U. S. 186, 188; *Penn General Casualty Co.* v. *Pennsylvania, supra,* p. 197. In the instant cases, not only had the state court first acquired jurisdiction, but there are numerous persons whose claims in relation to these funds are in course of adjudication. Whether or not their claims are valid against the claim of ownership by the United States, they are entitled to be heard and they are indispensable parties to any proceeding for the disposition of the property involved. They have not been made parties to the present suits, and this fact in itself would be a sufficient reason for the District Court to refuse to proceed in their absence. Only the stakeholders are defendants. The adverse claimants are parties to the respective proceedings in the state court and from every point of view the principles governing the convenient and orderly administration of justice require that the jurisdiction of the state court should be respected.

There is no merit in the suggestion that the United States, in presenting its claim in the state proceedings, would be compelled to take the position of a defendant,— being sued without its consent. In intervening for the presentation of its claim, the United States would be an actor—voluntarily asserting what it deemed to be its rights—and not a defendant. We cannot see that there would be impairment of any rights the United States may

possess, or any sacrifice of its proper dignity as a sovereign, if it prosecuted its claim in the appropriate forum where the funds are held.

As we are dealing simply with the question of the exercise of jurisdiction by the District Court, we intimate no opinion upon the merits.

The decrees are

*Affirmed.*