**CROWLEY, Alien Property Custodian, v. ALLEN et al.**

No. 22563–G.

District Court, N. D. California, S. D.

Nov. 17, 1943.

Frank J. Hennessy, U. S. Atty., and Thos. C. Lynch, Asst. U. S. Atty., both of San Francisco, Cal., A. Matt Werner, Gen. Counsel, Office of Alien Property Custodian, Geo. A. McNulty, Chief Alien Property Unit, War Division, Department of Justice, and Wallace H. Walker, Chief Trial Atty., Alien Property Unit, War Division, Department of Justice, all of Washington, D. C., and Harry LeRoy Jones, Sp. Asst. to Atty. Gen., for plaintiff.

S. C. Masterson, of Richmond, Cal., for defendants Alvina Allen and others.

Jackson Maddux, of San Francisco, Cal., for defendant San Francisco Bank.

Robert W. Kenny, Atty. Gen., and T. A. Westphal, Jr., Deputy Atty. Gen., amici curiae for State of California.

Matt Wahrhaftig, Atty. at Law, of Oakland, Cal., and H. W. Falk, Jr., Atty. at Law, of Ukiah, Cal., amicus curiae.

GOODMAN, District Judge.

Alvina Wagner, a resident of California, died June 6, 1942. By her last will and testament, dated December 23, 1941 and admitted to probate in the Superior Court of the State of California June 26, 1942, she bequeathed all her property (several parcels of real property in San Francisco California and some personal property of minor value) to two brothers, one sister and one niece, all nationals and residents of Germany. Six nieces and nephews, residents of California, petitioned the Superior Court as heirs of decedent for distribution of the estate to them, claiming that the German legatees were ineligible as beneficiaries under Section 259, 259.1 and 259.2 of the California Probate Code (effective July 1, 1941) which in substance provides that the right of aliens abroad to take real or personal property in the United States by will or descent, is conditioned upon the existence of a reciprocal right of Americans abroad and that such reciprocal right being absent, American heirs take. No determination of heirship has been made by the Superior Court.

On January 23, 1943, the plaintiff Alien Property Custodian, under the authority of Section 5 (b) of the Trading with the Enemy Act, as amended by Title III of the First War Powers Act, 1941, 50 U.S.C.A. Appendix, § 616, and Executive Order 9095 of July 6, 1942, 50 U.S.C.A.Appendix, § 6 note, by vesting order 762, vested in himself for the use of the United States all the right, title and interest of the German legatees in the estate of Alvina Wagner.

On April 6, 1943, plaintiff as Alien Property Custodian filed this action against The San Francisco Bank as executor of the Wagner will and the six claimant heirs, for a judgment vesting ownership of property of the estate, subject to the payment of administration expenses, inheritance and estate taxes and debts of decedent, in plaintiff and determining that defendant heirs have no right or claim thereto and ordering defendant executor to deliver over the net estate to plaintiff.

By separate answers, the defendant executor and the individual defendants claim lack of jurisdiction of this court and allege that the individual defendants are entitled to inherit the property of the estate under California law. Defendants move to strike the complaint for lack of jurisdiction. Plaintiff moves for summary judgment in favor of plaintiff.[1] Both motions have been argued and submitted. All parties agree that no question of fact is in-

---

[1] Rule 56, Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

852

volved and that the cause may be determined on the motions submitted.

The issues presented for determination are:

1. Has this court jurisdiction of the subject matter?

2. Is the cited California probate statute constitutional? If it is not, the property in probate should vest in plaintiff.

Plaintiff invokes the jurisdiction of this court under 36 Stat. 1091, 28 U.S.C.A. § 41(1) being a suit "of a civil nature * * * in equity, brought by the United States, or by any officer thereof authorized by law to sue," and the Trading with the Enemy Act (40 Stat. 411) 50 U.S.C.A. Appendix, § 17, (40 Stat. 425) whereby the District Courts "are given jurisdiction to make and enter * * * all such orders and decrees, and to issue such process as may be necessary and proper in the premises to enforce the provisions of this Act."

Defendants and amici curiae claim lack of jurisdiction asserting the action is in rem to determine title to property and would oust the state court of previously acquired jurisdiction of the res. Citing United States v. Bank of New York Co., 296 U.S. 463, 56 S.Ct. 343, 80 L.Ed. 331.

Section 5(b), the pertinent provision of the Trading with the Enemy Act, provides as follows:

"During the time of war or during any other period of national emergency declared by the President, the President may, through any agency that he may designate, or otherwise, and under such rules and regulations as he may prescribe, by means of instructions, licenses or otherwise—

   \*     \*     \*     \*     \*     \*

"B. Investigate, regulate, direct and compel, nullify, void, prevent or prohibit, any acquisition holding, withholding, use, transfer, withdrawal, transportation, importation or exportation of, or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest, by any person, or with respect to any property, subject to the jurisdiction of the United States; and any property or interest of any foreign country or national thereof shall vest, when, as, and upon the terms, directed by the President, in such agency or person as may be designated from time to time by the President, and upon such

terms and conditions as the President may prescribe such interest or property shall be held, used, administered, liquidated, sold, or otherwise dealt with in the interest of and for the benefit of the United States, * * *."

■ The Trading with the Enemy Act was originally enacted October 6, 1917, c. 106, 40 Stat. 411, was twice amended in 1918 (40 Stat. 459; 40 Stat. 1020); again amended in 1919 (41 Stat. 35); again amended in 1920 (41 Stat. 977); again amended in May 1940 (54 Stat. 179) and once more on December 18, 1941 by the First War Powers Act (55 Stat. 839). It is strictly a war measure, finding its authority in Art. 1, § 8, cl. 11 of the Constitution. Brown v. United States, 8 Cranch 110, 3 L.Ed. 504; Miller v. United States, 11 Wall. 268, 20 L.Ed. 135. By its terms, the President is granted wide authority to sequester, administer and dispose of alien enemy property in the United States and to proceed summarily and promptly to that end.

The judicial power, when properly invoked, under the statute, should function in like manner.

■ Art. 1, § 8, cl. 11 of the Constitution, empowers the Congress: "to declare War, grant Letters of Marque and Reprisal and makes Rules concerning Captures on Land and Water." The powers granted to the President in the Trading with the Enemy Act include the power to make "captures" on land. The sequestering of alien enemy property under vesting orders by the Alien Property Custodian, who is the President's agent, is in the nature of a "capture" under Art. 1, § 8, cl. 11 of the Constitution. Stoehr v. Wallace,. 255 U.S. 239, 242, 41 S.Ct. 293, 65 L.Ed. 604.

The important question here presented is whether federal jurisdiction in aid of the enforcement of this war statute, cannot be invoked because the property, sought to be vested, is in course of probate in the State court.

■ The jurisdiction of the federal courts is derived from the Constitution and congressional enactments. It is not subject to restriction or ouster by state legislation e. g. state probate procedural statutes. Miami County Natl. Bank v. Bancroft, 10 Cir., 121 F.2d 921; Payne v. Hook, 7 Wall. 425, 19 L.Ed. 260.

It is clear to me that the Congress intended that alien property in the United States should be "frozen" wherever found and held and administered only in the interest of and for the benefit of the United States. A complete federal dominance in every respect over alien rights and property, to the exclusion of state or local agencies, was obviously purposed. Economic warfare, as an aid to the defeat of the enemy, can only be effective if it is centralized and possesses over-all control.

█ It follows that the federal courts, granted by the Congress the power to issue decree and process in aid of the statute, have jurisdiction to enforce by decree, vesting orders of the Alien Property Custodian.

If it appeared that the property bequeathed was unquestionably vested in United States citizens resident in California, then obviously there would be no basis for claiming federal jurisdiction. Here, however, the validity of the state statute under which the California heirs make claim, is in issue and this, itself, furnishes the grounds for federal jurisdiction.

The California statute (Probate Code 259, 259.1 and 259.2) reads:

§ 259. "Aliens residing abroad; Dependence of rights upon reciprocity. The rights of aliens not residing within the United States or its territories to take either real or personal property or the proceeds thereof in this State by succession or testamentary disposition, upon the same terms and conditions as residents and citizens of the United States is dependent in each case upon the existence of a reciprocal right upon the part of citizens of the United States to take real and personal property and the proceeds thereof upon the same terms and conditions as residents and citizens of the respective countries of which such aliens are inhabitants and citizens and upon the rights of citizens of the United States to receive by payment to them within the United States or its territories money originating from the estates of persons dying within such foreign countries. (Added by Stats.1941, Ch. 895 § 1; effective July 1, 1941.)

§ 259.1. Same: Burden of establishing that rights are reciprocal. The burden shall be upon such nonresident aliens to establish the fact of existence of the reciprocal rights set forth in Section 259. (Added by Stats.1941, Ch. 895, § 1; Effective July 1, 1941.)

§ 259.2. Same: Disposition of property on finding of non-reciprocity. If such reciprocal rights are not found to exist and if no heirs other than such aliens are found eligible to take such property, the property shall be disposed of as escheated property. (Added by Stats.1941, ch. 895, § 1; Effective July 1, 1941.)"

By the foregoing statute, California attempted to enter a field of exclusive federal jurisdiction.

It is contended by defendants that the probate statute is a mere pronouncement of a rule of succession and testamentary disposition. That such is not the fact appears conclusively from the enabling clause which discloses the purpose of the statute to be:

"Sec. 2. This act is hereby declared to be an urgency measure necessary for the immediate preservation of the public peace, health and safety within the meaning of Section 1 of Article IV of the Constitution of the State of California, and shall take effect immediately. The following is a statement of the facts constituting such necessity:

"A great number of foreign nations are either at war, preparing for war or under the control and domination of conquering nations with the result that money and property left to citizens of California is impounded in such foreign countries or taken by confiscatory taxes for war uses. Likewise money and property left to friends and relatives in such foreign countries by persons dying in California is often never received by such nonresident aliens but is seized by these foreign governments and used for war purposes. *Because the foreign governments guilty of these practices constitute a direct threat to the Government of the United States, it is immediately necessary that the property and money of citizens dying in this country should remain in this country and not be sent to such foreign countries to be used for the purposes of waging a war that eventually may be directed against the Government of the United States.*"

The emphasized portions of the above "purpose" clause disclose that the California State Legislature did not adopt the probate statute as an orthodox procedural rule to regulate succession to property in the ordinary course.

To the contrary, the expressed design was to fix a policy of international relations, which, the Legislature thought, would

854

aid the United States in anticipated hostilities with a foreign government. If this were a valid exercise of state authority, by the same token, it could regulate aliens in other respects, by requiring registration, payment of fees, etc.,—all matters within the exclusive federal field. Hines v. Davidowitz, infra. Granted the patriotic impulse prompting the enactment of the State statute, nevertheless it invades the federal field.

The Attorney General of California and other amici curiae argue that plaintiff's vesting order has no res to which to attach itself, inasmuch as under the California Probate Code, the title to the real estate involved is already vested in California heirs. If it appeared from the record that the title to the property was unquestionable the point might be good. Here, however, the property was willed to alien nationals, and, but for the cited probate section, would so pass.

The Attorney General contends that in determining the issue presented, this court unlawfully enters the domain of State probate procedure. I do not find this to be so. The relief besought asks no more than a determination vesting the interests of the aliens in the Alien Property Custodian. The state probate procedure itself is to be untouched. See Commonwealth Trust Co. v. Bradford, 297 U.S. 613, 56 S.Ct. 600, 80 L.Ed. 920.

■ The California statute is invalid and unconstitutional because the State of California attempted, by the probate statute in question, to enter the field of foreign relations, a domain reserved exclusively to the federal government, free from local interference. United States v. Curtiss-Wright Export Corporation, 299 U.S. 304, 57 S.Ct. 216, 81 L.Ed. 255; United States v. Belmont, 301 U.S. 324, 57 S.Ct. 758, 81 L.Ed. 1134.

At the time the California statute was adopted (July 1941) there was in effect, between the United States and Germany, a treaty providing for reciprocity of inheritance rights between the two nations. Treaty of Friendship, Commerce and Consular Rights, dated December 8, 1923; ratification exchanged October 14, 1925; proclaimed October 14, 1925; 44 Stat. (part 3) 2132.

Prior to the adoption of the California statute, the Congress had in May 1940 amended the Trading with the Enemy Act to provide for "freezing" control over financial transactions.

■ It is contended that the Treaty above referred to was abrogated by war (December 7, 1941), and hence California was free to enter the field. Head Money Cases (Edye v. Robertson), 112 U.S. 580, 5 S.Ct. 247, 28 L.Ed. 798; Society for Propagation of Gospel v. New Haven, 8 Wheat. 464, 5 L.Ed. 662. It is not beyond question that war did in fact abrogate the treaty. Assuming that it did, by the amendment of the Trading with the Enemy Act in December 1941, the Congress clearly evidenced the intent that the federal government should occupy the field to the exclusion of state or local legislation. In Hines v. Davidowitz, 312 U.S. 52, at page 62, 61 S.Ct. 399, at page 402, 85 L.Ed. 581, Mr. Justice Black clearly states that: "When the national government by treaty or statute has established rules and regulations touching the rights, privileges, obligations or burdens of aliens as such, the treaty or statute is the supreme law of the land. * * * The Federal Government, representing as it does the collective interests of the forty-eight states, is entrusted with full and exclusive responsibility for the conduct of affairs with foreign sovereignties. * * * Our system of government is such that the interest of the cities, counties and states, no less than the interest of the people of the whole nation, imperatively requires that federal power in the field affecting foreign relations be left entirely free from local interference." Cf. Chy Lung v. Freeman, 92 U.S. 275, 279, 23 L.Ed. 550.

■ The Attorney General of California urges that the California Probate Court is a properly equipped and functioning court fully qualified to determine the questions presented in due course and that the federal court should "decline" jurisdiction. In view of what has been said infra re the authority and power granted to the President under the Trading with the Enemy Act and the mandate to the federal courts to issue decrees and process in aid thereof, it is my view the jurisdiction should be exercised, not declined.

Neither a desire to deprive California heirs of property vesting in them under the existing California law nor a purpose to increase the holdings of plaintiff as Alien Property Custodian has any part in this decision. That California heirs, in preference to alien enemies, cannot succeed to the

property of this estate, is perhaps regrettable. However, the decision herein must rest on broader grounds.

If the limitation of the powers of the state were not sustained in *principle*, evils now incapable of definition, would result from State entry into the Federal field.

My conclusion is that this court has jurisdiction. Having jurisdiction, the court determines that the state probate act is unconstitutional, being an invasion of the federal province.

The motion to strike the complaint is denied. The motion of the plaintiff for summary judgment is granted and a decree will enter granting the relief prayed for by plaintiff.