## LEGGETT v. GREEN.
### No. 14246.

United States Court of Appeals
Eighth Circuit.

May 8, 1951.

Rehearing Denied June 8, 1951.

James A. Finch, Cape Girardeau, Mo. (Jacob M. Lashly, John B. Sharpe, and Lashly, Lashly & Miller, all of St. Louis, Mo., on the brief), for appellant.

Oliver T. Remmers, St. Louis, Mo., for appellee.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is taken from an order entered in the Reorganization proceedings, under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., of Chilcote & Company, Inc., a Missouri corporation engaged in an insurance agency business. The order was entered in summary proceedings against the appellant who is the Superintendent, Division of Insurance of the State of Missouri, and Receiver under appointment by the Circuit Court of Jackson Coun-

ty, Missouri, in possession for liquidation purposes of all the assets of Mutual Commerce Casualty Company, an insolvent Missouri insurance company. Chilcote's petition for Reorganization was filed December 2, 1947. The determination of insolvency of the insurance company and appointment of Receiver for it by the State court was on September 26, 1947. By its terms the order appealed from declares that two sums of money aggregating $65,000 paid to the insurance company by Chilcote & Company and by one of its sub-agents, respectively, are "impressed with a trust", and the order requires the appellant as Receiver to pay in cash to the Trustee of Chilcote & Company the said two sums of money, plus interest, out of the assets of the Mutual Commerce Casualty Company prior to other claims against it.

The appellant contends among other things that as the assets of the insurance company are under the control and jurisdiction of the Circuit Court of Jackson County, Missouri, the Federal District Court was without jurisdiction to make disposition of such assets and that the court was without jurisdiction to make the order appealed from, and that it was clearly erroneous.

It appears that Chilcote & Company became the general agent for Mutual Commerce pursuant to a contract between them of March 31, 1947, and that there was a great increase in the amount of insurance undertaken by the insurance company. Under its contract with the agent, the insurance company did not require the agent to pay the net of the premium moneys received from the sale of insurance into the treasury of the company until between four and five months had elapsed after the occurrence of the transaction resulting in the right to the net premium. The reserves of the company were entirely insufficient in relation to the volume of its business.

It was a mutual insurance company as to which the Missouri statute provided that any person "may advance to such company any * * * money necessary for the purpose of its business" to be repaid with interest out of surplus. Section 5963, Art. 7,

Chapter 37, Revised Statutes of Missouri, 1939, R.S.1949, § 379.270. Chilcote & Company, Inc., and one of its sub-agents, William D. Landwehr, wrote a large volume of insurance for the Mutual Commerce company and were obligated in large amounts for net premiums received and not paid in to the insurance company. In that situation in order to prevent closing up the insurance company and to continue the advantages of the agency contract, Chilcote & Company, Inc., made a contribution to the surplus of the insurance company in the sum of $60,000, for which the insurance company issued its certificate of interest in Surplus and Guaranty Fund, promising repayment with interest out of surplus earnings of the insurance company.

William D. Landwehr, as sub-agent under Chilcote, wrote insurance in Mutual Commerce and was obligated for resulting net premiums belonging to the insurance company in the sum of about $19,000. In ordinary course contemplated by the contracts of the parties, the amount would have reached the insurance company through Chilcote & Company, but at the instance of the Superintendent, Division of Insurance, Landwehr paid $15,000 of it directly to the insurance company.

The Trustee in Reorganization of Chilcote & Company claimed that $50,000 of the $60,000 contribution made by Chilcote & Company was made by the corporation's chief officer and without authorization by the Board of Directors of the Chilcote corporation and that the transfer of the money left the corporation insolvent. He sought to compel the Receiver to pay the amount with interest out of the assets of the insurance company. As to the $15,000 payment made by William D. Landwehr, the Trustee claimed and the court found that the Superintendent, Division of Insurance, using the influence of his office with veiled threats, caused Landwehr to pay the sum, "and that on the books of the insurance company, Landwehr was not shown to have owed anything to the insurance company". The Trustee claimed, and the court concluded, that the Receiver should be compelled to pay the Trustee

$15,000, with interest, out of the assets of the insurance company.

The Superintendent, as Receiver, claimed that Chilcote & Company, Inc., owed the insurance company a balance of $58,831.16 on account of net premiums collected and retained, less a credit of $15,000 paid by the sub-agent Landwehr, and the order in question, among other things, declared that the Receiver of the insurance company had a tentative and unsecured claim as a general creditor against the Trustee of Chilcote & Company in the sum of $57,891.50. The Receiver denied any obligation to the Trustee of Chilcote & Company.

The issues of the controversy between the Trustee of Chilcote on the one side and the Superintendent, Receiver of Mutual Commerce, on the other were defined by pleadings filed by them in the reorganization proceeding and were tried by the court without a jury.

We do not find in the record either allegation or proof that any part of the $60,000 which was paid in to the insurance company by Chilcote, or of the $15,000 which was paid to it by the sub-agent Landwehr, could be traced or identified in the hands of the Receiver of the insurance company. On the contrary, the only fair inference to be drawn from the evidence is that the insurance company was in financial distress at all times when and after it got the payments in question, and did not keep them in hand. The court did not find that any part of them was traced to or identified in the hands of the Receiver.

It is therefore evident that the Order here complained of was not intended to be, and it is not, an order of reclamation to bring into the bankruptcy administration specific property identified as the property of the debtor in reorganization. The order manifestly undertakes to remove the assets of the insurance company from the control and jurisdiction of the state court and to subject them to administration by the federal court. It undertakes to make adjudication as to the existence of liens against and fix the order of distribution of the assets of the insurance company, and to award a priority in distribution to the Trustee of Chilcote ahead of the creditors of the insurance company. We think the order was without jurisdiction and erroneous.

The law is well settled that where a state court in Missouri has first acquired control and jurisdiction of the estate of an insolvent Missouri insurance company, the federal courts may not take action to remove the estate, or any part of it, from the state court's jurisdiction or to subject the same to the federal court's jurisdiction.

This court had occasion in Holley v. General American Life Insurance Company, 8 Cir., 101 F.2d 172, 174, to consider the Missouri statute concerning the liquidation of domestic insurance companies and we recognized that the Missouri law furnished "a comprehensive method for the winding up of [their] affairs by an officer of the state under the jurisdiction of a court of the state", and we held that such liquidation "cannot be interfered with by a federal court". "A federal court will take no action which will impair or will frustrate the jurisdiction of a state court with respect to such proceedings." The cases which this court cited from the Supreme Court and other courts fully support these declarations of its opinion. See also Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456, 466, 59 S.Ct. 275, 83 L.Ed. 285; United States v. Bank of New York and Trust Company, 296 U.S. 463, 475, 56 S.Ct. 343, 80 L.Ed. 331.

It is contended in support of the judgment here that the voluntary appearance of the Receiver of the insurance company in the reorganization proceedings in the federal court operated to confer jurisdiction upon that court to make the order appealed from. He did appear and obtained leave to inspect the books of Chilcote and also filed a claim as a general creditor. But he at all times asserted the exclusive jurisdiction of the state court over the assets of the insurance company and he denied that the federal court had jurisdiction over them. The federal court should have sustained the objection which the Receiver interposed to the exercise of federal jurisdiction over the assets under the control and jurisdiction of the state court.

It is therefore directed that the order of the District Court impressing a trust in the total amount of $65,000 on the assets in the hands of the Receiver, and directing payment of that amount in cash out of such assets to the Trustee, be reversed and vacated because of the lack of jurisdiction in the District Court to render it.

Order reversed and vacated as directed.