López Vilanova, Juez Ponente
*1081 TEXTO COMPLETO DE LA SENTENCIA
En el presente caso se impugna la jurisdicción de los Tribunales de Puerto Rico para entender en la acción instada por la agencia federal recurrida, por entender los apelantes que el Congreso de los Estados Unidos otorgó jurisdicción exclusiva a las cortes federales. Se cuestiona, además, la determinación de la cuantía adeudada y la titularidad concedida por el Tribunal recurrido a la agencia federal.
Examinada la sentencia, los escritos de las partes, a la luz del derecho aplicable resolvemos que el Tribunal de Primera Instancia actuó con jurisdicción, toda vez que la misma es una concurrente con la jurisdicción federal. Confirmamos, además, el dictamen emitido en todos sus extremos. Veamos los hechos que originan la controversia ante nos.
I
Mora Housing Management, Inc. (Mora Housing) administradora del complejo de apartamientos Bayola Apartments, instó demanda de desahucio contra el aquí apelante José Santana por incumplimiento del pago de los cánones de arrendamiento de la unidad de vivienda que éste ocupa en dicho complejo. La Oficina de Liquidación de Activos de la Corporación de Renovación Urbana de Viviendas (C.R.U.V.) suscribió el 23 de diciembre de 1994 un contrato con Mora Housing para la administración del referido complejo de apartamientos, el cual cubría el período de enero a diciembre de 1995. El complejo de apartamientos fue operado por la C.R.U.V. antes de su liquidación. Los apartamientos están adscritos al programa de subsidios federales para viviendas de H.U.D. Bajo este subsidio, el canon de arrendamiento mensual de Santana es menor al justo valor en el mercado del mismo, en virtud de que la hipoteca del complejo está subsidiada por H.U.D. y ésta efectúa pagos mensuales al arrendador que corresponden a pagos de asistencia al arrendatario. La totalidad de la deuda reclamada, correspondiente a cánones mensuales por $179.00 vencidos desde diciembre de 1992, ascendía a $6,763.00. Esta acción de desahucio por falta de pago constituia la segunda instada en contra del apelante. En la primera acción de desahucio recayó sentencia, el 5 de mayo de 1992, y se ordenó el desalojo de la propiedad. Antes de su desalojo, el apelante satisfizo la suma adeudada permaneciendo en la propiedad.
En el caso que nos ocupa, ambas partes presentaron mociones para que se dictara sentencia sumaria a su favor. Luego de un breve trámite procesal, que incluyó la sustitución del demandante original, Mora Housing, por H.U.D., el Tribunal de Primera Instancia, mediante la sentencia recurrida, declaró con lugar la demanda de desahucio ordenando el desalojo de la propiedad dentro del término de cuarenta (40) días a partir de la fecha en que la sentencia adviniera final y firme.
Fundamentó su determinación en que Santana incumplió sustancialmente el contrato de arrendamiento y que ello obedeció exclusivamente a su negligencia. Al así decidir determinó *1082 que Santana no solicitó en tiempo y de la manera prescrita la recertificación de sus cánones arrendamiento.
Es de este dictamen que se recurre ante nos.
II
Antes de considerar propiamente los señalamientos de error hechos por el apelante, conviene nos expresemos sobre el requisito de fianza en apelación en los casos de desahucio y nuestra jurisdicción apelativa en el caso del epígrafe.
-A-
La acción de desahucio se encuentra regulada en el Código de Enjuiciamiento Civil, 32 L.P.R.A. secs. 2821 2838. El artículo 631 de dicho Código, 32 L.P.R.A. sec. 2832, establece para los demandados, como requisito jurisdiccional para apelar de una sentencia de desahucio, la prestación de fianza suficiente. Andino v. Fajardo Sugar Co., 82 D.P.R. 85, 95 (1961); González v. López, 69 D.P.R. 944, 946 (1949). El propósito de dicha fianza es responder de los daños y perjuicios que puedan ser ocasionados al demandante y por las costas de la apelación. Es obligatorio prestar la referida fianza dentro del término dispuesto para presentar el recurso de apelación. Rodríguez Negrón v. Morales García, 105 D.P.R. 877, 880 (1977).
Sólo se exceptúa de la prestación de fianza a aquellos apelantes declarados insolventes por el tribunal de instancia a los fines de litigar libre del pago de derechos. Bucaré Management v. Arriaga García, 125 D.P.R. 153, 158-159 (1990). A estos efectos, el artículo 635, 32 L.P.R.A. sec. 2836, en lo pertinente, dispone que:

"En aquellos casos en que el tribunal, de conformidad a lo dispuesto en la see. 282(4) de este título, haya determinado la insolvencia económica de la familia contra la cual proceda el desahucio, se notificará con copia de la sentencia, luego de que ésta sea firme, a los Secretarios de los Departamentos de Servicios Sociales y de la Vivienda, para que estas agencias continúen brindando sus servicios a la familia afectada."

El Tribunal Supremo de Puerto Rico ha determinado que el requisito que obliga a prestar fianza en apelación es jurisdiccional en todo tipo de pleito de desahucio aun si no se basa el mismo en la falta de pago. Blanes v. Valdejuli, 73 D.P.R. 2, 5 (1952). Ahora bien, la ley dispone que cuando el desahucio se base en la falta de pago el demandado tiene la discreción para seleccionar entre otorgar la fianza o consignar en secretaría el importe de su obligación. Art. 631 del Código de Enjuiciamiento Civil, supra.
El caso del epígrafe se originó mediante demanda de desahucio por falta de pago e incumplimiento de contrato. No surge expresamente del expediente la prestación de fianza en apelación ni que el Tribunal de Primera Instancia hubiese declarado al apelante insolvente. No obstante, advertimos que en la notificación de la sentencia apelada se incluyó también a los Departamentos de la Vivienda y de Servicios Sociales. Ello es indicativo de la aplicación por el tribunal sentenciador de lo dispuesto por el artículo 635, antes citado. Siendo así, concluimos que este Tribunal posee jurisdicción apelativa para entender en el presente caso.
-B-
En su primer señalamiento de error, el apelante cuestiona la jurisdicción del tribunal sentenciador para entender en casos en donde el demandante es una agencia federal. Señala en apoyo de su impugnación que la Ley de la Judicatura Federal, 28 U.S.C. see. 1345, dispone que los Estados Unidos, sus agencias y oficiales sólo pueden acudir, como parte, a las cortes de distrito federales. Expresa que la única excepción a esta regla es que una ley del Congreso autorice expresamente a los Estados Unidos, sus agencias u oficiales a comparecer *1083 a otro foro. No tiene razón. La aludida sección 1345, supra, confiere jurisdicción original a las cortes de distrito federal para entender en los pleitos civiles comenzados por los Estados Unidos, sus agencias u oficiales. Específicamente dispone lo siguiente:
"Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress."
El apelante alega que la jurisdicción que confiere la sección 1345 es una exclusiva. Sin embargo, de un examen a la misma resulta manifiesto que lo correcto es que la jurisdicción conferida es una original y no exclusiva como éste alega.
La jurisdicción exclusiva comporta que el foro con ella investido es el que tiene potestad adjudicativa sobre una acción o persona con exclusión de cualquiera otro. Por otro lado, la jurisdicción original confiere autoridad al foro para entender en un caso en primera instancia o lo que es igual desde su origen. Al aprobar la mencionada sección, la intención del Congreso fue conferir jurisdicción sobre la materia a las cortes de distrito federales para entender en los casos civiles iniciados por los Estados Unidos, sus agencias u oficiales, sin necesidad de que se observasen otras consideraciones tocantes a este tipo de jurisdicción. Wright, Miller & Cooper, Federal Practice and Procedure, Jurisdiction 2nd, Minnesota, West Publishing Co., 1985 (Supl. 1997), T. 14, pág. 151.
Interpretando la sección 1345, supra, se ha concluido que la jurisdicción sobre la materia de las cortes de distrito federales sobre las acciones civiles comenzadas por los Estados Unidos es una concurrente con la de las cortes estatales. Id., pág. 154; U.S. v. Tsosie, 92 F.3d 1037, 1041 (10th Cir. 1996). Véase también lo expresado en United States v. Bank of New York & Trust Co., 296 U.S. 463, 479 (1936), sobre la sección predecesora a la actual sección 1345. Ahora bien, existen excepciones a la jurisdicción concurrente con las cortes estatales. Sin embargo, en ellas el Congreso confiere la jurisdicción exclusiva a las cortes federales de manera expresa. Entre éstas se encuentran la sección 1355, concerniente a acciones para la recuperación de penalidades impuestas bajo una ley del Congreso, y la sección 1356, referente a acciones para la incautación de cualquier terreno o cuerpo de agua no sujeto a jurisdicción marítima o de almirantazgo.
Siendo así, de no mediar ley que confiera jurisdicción exclusiva a las cortes federales, los Estados Unidos, sus agencias y oficiales tienen la elección de instar sus acciones tanto en las cortes federales como a las cortes estatales.
Por tanto, resulta incorrecta la conclusión del apelante referente a que los Estados Unidos, sus agencias y oficiales sólo pueden acudir a las cortes federales y que únicamente por excepción, cuando una ley del Congreso así lo autorice, están en libertad de acudir a otro foro. Como antes expuesto, el esquema establecido es en sentido opuesto.
En conclusión, al no existir excepción que confiera jurisdicción exclusiva a las cortes federales sobre la materia en controversia del presente caso, la jurisdicción era concurrente y el tribunal sentenciador tenía la autoridad para entender y emitir sentencia en el mismo.
-C-
En su segundo señalamiento de error, el apelante cuestiona la determinación de titularidad concedida a la apelada. Santana alega, de manera muy intrincada, que el contrato de mandato suscrito por Mora Housing y la C.R.U.V. fue nulo por conllevar actos de dominio relacionados con un bien inmueble y no constar en documento público. En la alternativa, alega que dicho contrato sólo cubrió el período de enero a diciembre de 1995 y que con posterioridad a esa fecha Mora Housing no estaba autorizada a iniciar una acción de cobro de *1084 cánones vencidos. Con ello, pretende atacar la titularidad del apelado, elemento necesario en un juicio de desahucio por ser éste un procedimiento especial de naturaleza sumaria, desdoblando así un conflicto de título que impida la resolución de la controversia por esta vía abreviada. Veamos porqué no tiene razón el apelante.
En lo que refiere a su primera alegación de que el contrato de mandato es nulo, toda vez que el mismo conlleva actos de dominio relacionados con un bien inmueble y no consta en documento público, sostenemos que el contrato en cuestión no contiene declaración alguna que evidencie la intención de autorizar al mandatario la realización de actos de dominio con el complejo de apartamientos en cuestión. El contrato entre Mora Housing y la C.R.U.V. se trata de un mandato elaborado en términos generales que sólo daba lugar a actos de administración. Siendo así, no era necesario que el mismo se constituyera mediante escritura pública.
La segunda alegación de que Mora Housing no tiene capacidad para instar la presente acción de desahucio es infundada. De entrada conviene expresar que debido a la sustitución de Mora Housing como parte demandante, los señalamientos en apelación relativos a su falta de capacidad para instar la presente acción resultan académicos. Aparte de la impugnación que el apelante ahora presenta, del expediente no surge que éste siquiera opusiera a la sustitución de parte ordenada por el tribunal a quo, que permitió a Intown Properties, Inc., en representación de H.U.D., continuar con la acción de desahucio instada por Mora Housing. Si éste consideraba que H.U.D. no tenía capacidad para sustituir a Mora Housing y a la Oficina de Liquidación de Activos de la CR.U.V. así debió haberlo expuesto ante el tribunal sentenciador. De otra parte, el apelante nada alude en contra del interés de H.U.D. para proseguir la acción de desahucio. Se limita a mencionar que ésta no presentó evidencia que demostrara su capacidad para subrogarse legalmente en sustitución de Mora Housing y de la Oficina de Liquidación de Activos de la C.R.U.V.
Asimismo, no está claro del escrito de apelación si la aducida falta de capacidad se basa en que Intown Properties, Inc., no era el administrador cuando ocurrió el incumplimiento en el pago de los cánones de arrendamiento o porque éste nunca ostentó una administración válida del complejo Bay ola Apartments.
De ser la primera, la alegación del apelante conllevaría que, ocurrido un incumplimiento, si al administrador vigente le expirase su contrato de administración sin haber iniciado la acción de desahucio, el nuevo administrador estaría impedido de iniciar dicha acción por el incumplimiento acontecido bajo el previo contrato de administración. Validar tal contención implicaría un claro desacierto. El derecho sobre la cuenta a cobrar de un alquiler, concretizado en los cánones de arrendamientos, no pertenece al agente administrador de turno. Por tanto, la terminación de una administración no milita en contra del derecho a cobro que tiene el verdadero poseedor del mismo, y el cual está facultado a reclamar a través de cualquier otro agente. Siendo así, la vigencia de este derecho no depende de ningún acto de cesión que pueda efectuar un administrador a favor de su sucesor en las labores de administración.
Con respecto al segundo supuesto, conviene puntualizar que Intown Properties, Inc., como agente administrador de H.U.D. para el complejo de apartamientos Bayola Apartments, solicitó ante el tribunal apelado la sustitución de la parte demandante. Fundamentó su solicitud en que H.U.D. era acreedor hipotecario en posesión del referido complejo de apartamientos. El apelante no objetó ante instancia ese hecho y tampoco presentó prueba alguna en apelación en apoyo de su impugnación a estos efectos.
Es correcto, como alega el apelante, que una vez ocurre la sustitución, la parte sustituía ocupa la misma posición con relación a la causa de acción que la parte sustituida. Lluch v. *1085 España Service Sta., 117 D.P.R. 729, 750 (1986). Sin embargo, en el presente caso, esto no significa que el nuevo administrador, Intown Properties, Inc., estuviera subyugado por los límites temporales que tenía Mora Housing para instar una acción de desahucio en virtud de su contrato de administración. Aquí la sustitución operó por ser Intown Properties el nuevo administrador del Complejo Bay ola Apartments y como tal estaba facultado a reclamar el pago de cualquiera de los cánones vencidos.
Aunque es principio reiterado que los conflictos de título no deben dilucidarse en un procedimiento de desahucio por razón de su naturaleza sumaria, C.R.U.V. v. Román, 100 D.P.R. 318, 321 (1971), nuestro Tribunal Supremo ha establecido que esta regla general no debe extenderse a casos en que no hay posibilidad de título a favor de la parte demandada. Id. (citando a Linpitt v. Llanos, 47 D.P.R. 269 (1934)). No debe pasarse por alto que la acción de desahucio es una posesoria en la que se intenta recuperar la posesión de un inmueble. Valga consignar que, en una acción de desahucio es responsabilidad del demandado el presentar prueba, suficiente para dejar establecido el conflicto de título que impide la ventilación sumaria de la causa. Dicha prueba debe demostrar que tiene derecho a ocupar el inmueble y que tiene un título igual o mejor que el que posee el demandante en desahucio. Id., pág. 322.
En el presente caso el apelante no presentó prueba alguna que impugne el derecho de posesión que H.U.D. alegó al solicitar la sustitución de parte y su deseo de continuar la acción de desahucio. El tribunal apelado pasó juicio sobre ese derecho y lo consideró válido. Ante la ausencia de prueba resulta imposible que revoquemos dicha determinación. Más aún, cuando el apelante tampoco presenta prueba para establecer que tuviera derecho a ocupar el inmueble y que tuviera un título igual o mejor que el que poseía H.U.D. Además, como antes mencionado, en casos donde no hay posibilidad de título a favor de la parte demandada nunca debe imputarse la prohibición al proceso sumario que levanta un auténtico conflicto de título.
-D-
Por último, cuestiona el apelante la determinación acerca de que la cantidad adeudada en cánones de arrendamiento era una cantidad cierta, líquida y exigible. Alega que en los contratos de arrendamiento bajo el Programa de la Sección 8 de la Ley Federal de Vivienda y Desarrollo Comunal, 42 U.S.C. 1437, los arrendadores están obligados a cumplir con el procedimiento de certificación de los cánones de arrendamiento. Expresa que si no se cumple con dicho proceso la cantidad de alquiler no se considera una cierta, líquida y exigible, y que dicha situación obliga a la ventilación de la acción por la vía ordinaria en lugar del trámite sumario de la acción de desahucio. Fundamenta su señalamiento en lo resuelto por nuestro Tribunal Supremo en el caso de Mora Development Corp. v. Sandín, 118 D.P.R. 733 (1987).
La acción de desahucio es una posesoria en la que se discute el derecho a posesión de un inmueble. Escudero v. Mulero, 63 D.P.R. 574, 586 (1944). Por tanto, en casos de arrendamientos de bienes inmuebles, el desahucio no es el medio de rescindir dicho contrato, sino el mecanismo judicial utilizado para recuperar la posesión del inmueble arrendado, cuando el contrato de arrendamiento se termina por alguna causa extintiva. Mora Development Corp. v. Sandín, supra, pág. 741. Es decir, además de la falta de pago, dicha causa extintiva puede .originarse ante el incumplimiento, por parte del arrendatario, de cualquier cláusula sustancial del contrato de arrendamiento. Al respecto, el artículo 1459 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 4066, dispone:

"El arrendador podrá desahuciar judicialmente al arrendatario por alguna de las causas siguientes:

1. Haber expirado el término convencional o el que se fija para la duración de los arrendamientos en las sees. 4083 y 4092 de este título [artículos 1467 y 1471],

*1086
2. Falta de pago en el precio convenido.

3. Infracción de cualquiera de las condiciones estipuladas en el contrato.

4. Destinar la cosa arrendada a usos y servicios no pactados que la hagan desmerecer; o no sujetarse en su uso a lo que se ordena en el inciso (2) de la see. 4052 de este título [artículo 1445]."

Sin duda, la falta de pago del canon de arrendamiento establecido en el contrato es una violación a las condiciones del contrato. Ahora bien, para que proceda el proceso sumario de desahucio bajo este incumplimiento, nuestro Tribunal Supremo ha exigido que el precio adeudado sea uno cierto y determinado. Mora Development Corp. v. Sandín, supra, págs. 748-750. En dicho caso el arrendatario disfrutaba del subsidio de renta federal provisto por la Sección 8 de la Ley Federal de Vivienda y Desarrollo Comunal, supra. El arrendatario, al perder sus beneficios por desempleo, informó esta situación al arrendador para que realizara el ajuste de renta correspondiente. El arrendador no realizó la recertificación especial para ajustar la renta conforme la pérdida de beneficios percibida por el arrendatario. El Tribunal Supremo determinó que cuando un arrendador, participante en el programa de subsidios de la Sección 8, incumple su obligación de ajustar el alquiler, impuesta por mandato legal, reglamentario y contractual, "está impedido de reclamar la resolución del contrato de arrendamiento en aquellas situaciones en que el inquilino haya cumplido cabalmente con su deber de informar un cambio en la situación económica o familiar". Expresó, además, nuestro más alto Tribunal que, acreditado el cambio en el ingreso familiar, el arrendador incumplió con su obligación de ajustar la renta, y que dicha corrección guardaba relación directa con la determinación del alquiler e implicaba la situación anormal de un arrendamiento sin precio cierto que pudiera servir de base a la acción de desahucio.
En su sentencia el tribunal apelado distinguió el caso de Mora Development Corp. v. Sandín, supra, del caso del epígrafe, razonando que la controversia de este último no era propiamente un desahucio por falta de pago sino que estaba "predicada en el incumplimiento de la demandada de efectuar los pagos de los cánones de arrendamiento los días primero de cada mes...". Coincidimos con el tribunal a quo en que el presente caso es distinguible del caso de Mora Development Corp. v. Sandín, supra. Sin embargo, la distinción descansa en otros fundamentos. En el caso de Mora el arrendatario solicitó y presentó prueba de que su situación económica había variado por la pérdida de sus beneficios por desempleo. Ante dicha circunstancia el arrendador estaba obligado a realizar la recertificación para ajustar la renta. Fue en ese contexto que nuestro Tribunal Supremo refrendó el argumento de que el incumplimiento con la obligación de recertificar al arrendatario conllevaba la ausencia de un canon cierto y determinado.
A diferencia de Mora, en el caso ante nos, el apelante no probó que ocurriera un cambio en su situación económica o familiar. Tampoco éste estaba solicitando una recertificación de su renta. Más aún, según consignó en su sentencia el tribunal apelado, el apelante admitió que incumplió su obligación de suministrar al arrendador las declaraciones sobre su situación económica y familiar, documentos necesarios para que el arrendador realizara cualquier recertificación. Valga señalar que el apelante fue recertificado, el 1ro. de julio de 1996, antes de la presentación de la demanda de desahucio que originó el presente caso, quedando inalterado el canon de arrendamiento mensual en $179.00. Dicha certificación aparece firmada por el apelante y su esposa. Véase apéndice del Escrito de Apelación, Anejo 5, pág. 127. No debemos pasar por alto que nuestro Tribunal Supremo condicionó sus expresiones de Mora Development Corp. v. Sandín, supra, en torno al impedimento del arrendador de reclamar la resolución del contrato de arrendamiento a situaciones en donde el inquilino haya cumplido cabalmente con su deber de informar un cambio en la situación económica o familiar. Siendo así, sostenemos que el apelante no demostró hechos específicos que *1087 justifiquen la conversión del procedimiento en uno ordinario.
Ill
En virtud de todo lo anterior, se dicta sentencia confirmando la dictada en este caso por el tribunal apelado.
Notifíquese.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ilenana Oquendo Graulau
Secretaria General