**EDEN MEMORIAL PARK ASSOCIA-TION, Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 17498.**

United States Court of Appeals
Ninth Circuit.

Feb. 15, 1962.

HAMLEY, Circuit Judge.

In this federal condemnation proceeding an order was entered enjoining Eden Memorial Park Association, owner of two parcels being condemned, from seeking injunctive relief in certain litigation then pending in state courts. Eden appealed, and thereafter moved for an order staying the condemnation proceedings and granting other relief pending disposition of the appeal by this court.[1] At the argument on this motion both Eden and the United States urged us to take the appeal under submission on the merits as well as on the motion for a stay pending disposition of the appeal. This was done.

The land in question is part of a cemetery owned and operated by Eden. It is being condemned for use as a part of the "Interstate System" of highways referred to in the Federal-Aid Highways Act of August 27, 1958, 72 Stat. 885, 23 U.S.C.A. § 101, et seq.

On November 1, 1960, the Department of Public Works of the State of California commenced a condemnation proceeding in the Superior Court of the State of California in and for the County of Los Angeles, for the purpose of acquiring this land for the highway purposes described above. An *ex parte* order for possession was entered by that court. Subsequently, Eden moved in that proceeding to vacate the order of possession, contending that construction of a highway on this cemetery land was barred by sections 8560 and 8560.5 of the Health and Safety Code of California.[2]

Sandler & Rosen, Nelson Rosen, Thorpe, Sullivan, Clinnin & Workman, Beverly Hills, Cal., for appellant.

Ramsey Clark, Asst. Atty. Gen., Francis C. Whelan, U. S. Atty., Richard J. Dauber, Asst., Los Angeles, Cal., Roger P. Marquis, Attorney, Dept. of Justice, Washington, D. C., for appellee.

Before HAMLEY, JERTBERG and MERRILL, Circuit Judges.

1. The order granting the injunction was interlocutory, and the jurisdiction of this court to entertain the appeal therefore rests on 28 U.S.C.A. § 1292(a).

2. Sections 8560 and 8560.5 read as follows:
   "§ 8560. **Construction of thoroughfares or utilities through cemeteries.** After dedication pursuant to this chapter, and as long as the property remains dedicated to cemetery purposes, no railroad, street, road, alley, pipe line, pole line, or other public thoroughfare or utility shall be laid out, through, over, or across any part of it without the consent of the cemetery authority owning and operating it, or of not less than two-thirds of the owners of interment plots. (Stats.1939, c. 60, p. 704, § 8560.)"
   "§ 8560.5. **Streets, alleys or roads within cemeteries.** No streets, alleys, or roads shall be opened or laid out within the boundary lines of any cemetery located in whole or in part within the lines of any city or city and county, where burials in the cemetery have been had within five years prior thereto, without the consent of the person owning and controlling the cemetery. (Added Stats. 1953, c. 83, p. 805, § 2.)"

This motion was denied by the Superior Court, whereupon Eden appealed to the State District Court of Appeal of the Second Appellate District. On February 24, 1961, that court issued an order annulling the order of possession theretofore entered by the state trial court and prohibiting further state court proceedings with respect to the condemnation of the cemetery land. The court held that sections 8560 and 8560.5 of the California Health and Safety Code prevented the state from condemning or establishing roads across cemetery property. Eden Memorial Park Ass'n v. Superior Court, 189 Cal.App.2d 421, 11 Cal.Rptr. 189. The California Supreme Court thereafter denied the Department's petition to review the decision of the District Court of Appeal.

Following this decision, J. C. Womack, State Highway Engineer of the State of California, requested the Secretary of Commerce of the United States to condemn this land. Womack thus sought to invoke a provision of the Federal-Aid Highways Act which authorizes the United States to acquire land by condemnation under certain circumstances, for the purpose of conveying it to a state which would construct and maintain a state highway thereon. See 23 U.S.C.A. § 107.[3]

Responsive to Womack's request, the United States on April 27, 1961, commenced the instant condemnation proceeding. Concurrently therewith it filed a declaration of taking and a notice of motion for an order for immediate possession.

On May 5, 1961, Eden and Sol Rosenberg, filed a complaint for injunction in the Superior Court of the State of California in and for the County of Los Angeles. The case was docketed as No. 770431. Rosenberg is an officer of Eden, but he joined in the action in his capacity as a citizen, resident and taxpayer of the State of California. Named as defendants in this action were the Department of Public Works of the State of California, the director of that department, the State Highway Engineer (Womack), the California Highway Commission, and various other state officers and employees.

In this state action plaintiffs sought to enjoin the defendants therein from entering upon or taking possession of the cemetery land involved in the federal con-

**3.** Section 107 reads in part:

"(a) In any case in which the Secretary is requested by a State to acquire lands or interests in lands (including within the term 'interests in lands', the control of access thereto from adjoining lands) required by such State for right-of-way or other purposes in connection with the prosecution of any project for the construction, reconstruction, or improvement of any section of the Interstate System, the Secretary is authorized in the name of the United States and prior to the approval of title by the Attorney General, to acquire, enter upon, and take possession of such lands or interests in lands by purchase, donation, condemnation, or otherwise in accordance with the laws of the United States (including the Act or February 26, 1931, 46 Stat. 1421), if—

"(1) the Secretary has determined either that the State is unable to acquire necessary lands or interests in lands, or is unable to acquire such lands or interests in lands with sufficient promptness; and

"(2) the State has agreed with the Secretary to pay, at such time as may be specified by the Secretary an amount equal to 10 per centum of the costs incurred by the Secretary, in acquiring such lands or interests in lands, or such lesser percentage which represents the State's pro rata share of project costs as determined in accordance with subsection (c) of section 120 of this title.

\* \* \* \* \*

"(c) The Secretary is further authorized and directed by proper deed, executed in the name of the United States, to convey any such lands or interests in lands acquired in any State under the provisions of this section, except the outside five feet of any such right-of-way in any State which does not provide control of access, to the State highway department of such State or such political subdivision thereof as its laws may provide, upon such terms and conditions as to such lands or interests in lands as may be agreed upon by the Secretary and the State highway department or political subdivisions to which the conveyance is to be made. \* \* \*"

demnation proceedings or constructing thereon a public highway. They also sought to enjoin those defendants from authorizing contractors to enter upon the land for construction purposes, expending state funds for the purpose of acquiring the land or constructing a highway thereon, entering into contracts purporting to obligate the state to expend state funds for such purposes, and paying to the United States or any official thereof or any person state funds in connection with such purposes.

In their complaint in this state action plaintiffs alleged the facts concerning the prior state action in which the condemnation proceedings instituted by the Department of Public Works were brought to a halt because of the provisions of sections 8560 and 8560.5. They further alleged that notwithstanding the judgment entered in the prior suit and in disregard of California state policy evidenced by sections 8560 and 8560.5, the state agencies and officials named in the new state suit threaten to take possession of the identical land and to lay out and construct a highway thereon. The plaintiffs in the state action also alleged that the named state agencies and officials intend to enter into contracts and expend state funds for the stated purpose.

Allegations were made concerning the request which Womack had made for federal condemnation, it being asserted that he was not authorized to make such a request on behalf of the state. It was also averred that it is the intention of the Federal Highway Administrator and the Secretary of Commerce upon acquiring the land in a federal proceeding to transfer title therein to the state or to permit the Department of Public Works to take immediate possession and to commence construction of a state highway thereon. Any such acts by state agencies and officials, it was alleged, would be illegal, unauthorized, arbitrary and in violation of the laws of the state. The threat of ir-

reparable injury and the inadequacy of any remedy at law were also averred.

On May 12, 1961, Eden filed its verified answer to the complaint in the federal condemnation proceeding. Two defenses were therein asserted, the first being that the complaint in condemnation fails to set forth facts showing that there had been a compliance with alleged statutory conditions precedent to the bringing of such a suit, as prescribed in section 107 of the Federal-Aid Highways Act. According to the answer, these conditions precedent are that (1) the state request the Secretary of Commerce to acquire the lands; (2) the Secretary determine that either the state is unable to acquire the lands or is unable to acquire them with sufficient promptness; and (3) the Secretary determine that the state has agreed with the Secretary to pay a stated percentage of the cost of acquiring the land.

Eden's second defense raised the following specific objections: (1) the United States is not authorized by law to take or attempt to take the subject land; (2) the Federal Highway Administrator is not authorized by law to take, or attempt to take the land; (3) the state has not requested that the United States acquire the land, this being a statutory condition precedent to the instituting of a section 107 condemnation proceeding; and (4) the State Highway Engineer was not authorized to make such a request on behalf of the state and the purported request made by him was illegal, ultra vires, arbitrary, in violation of the public policy of the state, and contrary to express state statutory prohibitions.[4]

Concurrently with the filing of its answer Eden filed its response and objection to the Government's motion for an order of immediate possession together with a motion to vacate and set aside the declaration of taking. In the alternative Eden asked that the district court stay the issuance of an order for immediate possession and stay all other proceedings in the district court until there was

---

4. In its answer Eden also advised the court of the injunction action which it and Ros-  enberg had filed in the state court on May 5, 1961.

a determination by the state court of the issues of law there involved. On May 15, 1961, the district court granted the order of immediate possession and denied Eden's motion to vacate the declaration of taking and to stay the federal proceedings.

In the concurrent state court proceeding the superior court on May 16, 1961, denied plaintiff's application for a preliminary injunction. However, the court ordered that, pending an appeal from the denial and subject to modification by the court, the defendants would be restrained from building or constructing any permanent structure of any kind or any permanent highway upon the land in question. The order specifically permitted the defendants to construct temporary facilities.

On May 19, 1961, the Government filed in the condemnation action a petition for a preliminary injunction and for an adjudication in contempt. The facts concerning the federal condemnation proceeding, the plan to have the highway constructed by the state, and the newly instituted state court proceeding were recited therein. It was alleged that Eden instituted the state suit wilfully and with the purpose and intent of circumventing the effect of the declaration of taking and the orders of the court in the federal condemnation proceeding.

It was further alleged that the state action was commenced for the purpose of hindering, interfering with, and preventing the work of placing the necessary improvements upon the land in question. The Government also averred that although the United States is the real party in interest in the state proceeding because of its ownership of the property involved and by reason of its agreement to provide funds for the highway program, it has no way of participating in the state suit.

Irreparable damage by reason of the pendency of the state action was alleged. The relief sought was an injunction against Eden and its attorneys restraining them from the prosecution of the state action or the instituting of any other state action, an order requiring Eden to obtain the vacation of the state court restraining order then in effect, and an order adjudging Eden and its attorneys to be in contempt.

At the hearing on this petition, held on May 25, 1961, the district court orally ordered the restraining order issued by the state court to be vacated by 5:00 P.M. of that day. On May 31, 1961, the district court entered findings of fact and an order, the latter containing the following provisions: (1) directing Eden to forthwith move in the concurrent state court proceedings to set aside the temporary restraining order then in effect,[5] and (2) restraining Eden from applying to a state court for any further injunctions or restraining orders affecting the property in question.

It is from this order of May 31, 1961, that Eden appeals to this court. It is in connection with that appeal that Eden has moved for a stay. The relief specifically sought in this motion is as follows: (1) a stay of all proceedings in the federal condemnation action pending disposition of the appeal, (2) suspension, pending determination of the appeal, of the order for immediate possession issued on May 15, 1961, (3) suspension of the order of injunction issued on May 31, 1961, and (4) any other relief deemed appropriate to preserve the *status quo* while this appeal is pending.

On October 5, 1961, this court entered its order staying certain provisions of the district court order under review pending disposition of this appeal, provided Eden file a supersedeas bond in an indicated amount.[6]

5. While the parties have not raised the question it is a matter of some speculation how the district court, which did not have Rosenberg before it, could order Eden to take steps to vacate a state restraining order which Rosenberg, along with Eden, had obtained.

6. It is provided in this stay order that " * * * the provisions of paragraphs one and two of the district court

We now proceed to consider, on the merits, the appeal from the order concerning which we have granted a partial stay.

■ Title 28 U.S.C.A. § 2283, providing that a court of the United States may not grant an injunction to stay proceedings in a state court "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments," is inapplicable to stays sought by the United States. Leiter Minerals, Inc. v. United States, 352 U.S. 220, 226, 77 S.Ct. 287, 291, 1 L.Ed.2d 267.

■ But the question remains whether the granting of an injunction was proper in the circumstances of this case. It was proper if necessary to prevent impairment of any rights obtained, or to be obtained, by the United States in the condemnation proceeding. See United States v. Bank of New York & Trust Co., 296 U.S. 463, 480–481, 56 S.Ct. 343, 80 L.Ed. 331; Leiter Minerals, Inc. v. United States, supra, at 226, 77 S.Ct. 287.

■ Two factors, the court found, made it necessary to order Eden to obtain dissolution of the state court temporary restraining order and to enjoin further state injunction proceedings. The first of these was, in effect, that in the state action, Eden contests the ownership of the United States in the land despite the declaration of taking. The second was that, in the state action, Eden sought relief which would make ineffective the order of immediate possession, and which would interfere with the exercise of ownership of the United States in this land.

order filed May 31, 1961 requiring Eden Memorial Park Association to forthwith move in the case of Eden Memorial Park Association et al. v. The Department of Public Works of the State of California et al., No. 770,431, pending in the Superior Court of the State of California in and for the County of Los Angeles, to set aside the limited temporary restraining order entered on May 19, 1961, in that proceeding, are stayed pending the disposition of this appeal, but for the limited purpose of enabling Eden Memorial Park Association to obtain in the

The district court found that in the state action Eden asserted continued ownership of the land despite the declaration of taking.

Neither the United States nor any of its agencies or officials were made parties to the state action, nor was the land in question brought before the state court in anything approaching an *in rem* proceeding. Under these circumstances we do not perceive how any claim to ownership made by Eden in that state action could possibly affect the title acquired by the United States by its declaration of taking. Assuming that the outcome of that *in personam* state action to which the United States is not a party would be an adjudication that Eden continued to own the land, such a judgment would neither operate to divest the United States of its title nor have any effect by way of res judicata to impair such title.[7]

In any event we do not agree with the district court's view that, in the state action, Eden contests the ownership of the United States. The only language contained in the complaint filed by Eden in the state court which tends to support this view is the two italicized words contained in the following allegation:

"* * * the defendant Department * * * intends and threatens to take possession of, and to lay out and construct a public road * * *, through, over and across the subject land *of Eden* in violation of the aforesaid statutes. * * *"

Eden asserts that the words "of Eden" were used inadvertently. Analysis of the

state court proceeding, if this may be done, an order staying, restraining or enjoining further permanent construction work on the tract in question pending, among other things, the disposition of the instant appeal."

7. The district court recognized this, remarking during the oral announcement of the decision granting the stay:
"* * * any declaration the judge may make against the state officers * * * wouldn't be interfering with the ownership of the Government of the United States."

complaint indicates that this is true. The relief prayed for was directed solely against state agencies and officials who were not alleged to then have any control over the title to the land. No request was made for adjudication of title or to divest or in any manner adversely affect the title then resting in the United States. Moreover, the complaint contains other allegations expressly recognizing that title to the land had passed to the United States.[8] In the argument before the district court, counsel for Eden assured the court that they recognized that title was in the United States subject to possible defeasance as a result of further federal court proceedings, and that no issue concerning title was being raised in the state court.[9]

We conclude that the order staying proceedings to obtain a state court temporary restraining order or permanent injunction is not warranted on the ground that, in the state action, Eden contests the ownership of the United States in the land despite the declaration of taking.

The district court also held, in support of its stay order, that in the state action Eden sought relief which would make ineffective the order of immediate possession, and which would interfere with the exercise of ownership of the United States in this land.

The relief sought in the state court, to which reference is here made, is the enjoining of state officials from taking possession of the land in question, entering into contracts with road builders to construct highway facilities, and expending state money on the project.

In our view, none of this relief, if granted in the state action, interferes with any right to possess and use the land which the United States has gained or expects to gain as a result of the condemnation proceedings. If the United States has gained the right to have the state accept this property and construct and operate a highway thereon, it is not because of any rights acquired by the United States in these condemnation proceedings; rather, it is by virtue of the section 107(a)(2) agreement and possibly other agreements which the state has entered into with the United States.

The Government's view, advanced in the district court, and accepted by that court,[10] that in the performance of the acts and threatened acts, these state agencies and officials are agents of the United States, seems to us immaterial.[11] Any agency relationship which may have come into existence is by virtue of section

8. These allegations read as follows:
"(d) Plaintiff alleges that it is the intention of the Federal Highway Administrator and the Secretary of Commerce of the United States to *immediately transfer title* to the subject land to Department of Public Works of the State of California, or, in the alternative, to permit the Department of Public Works to take immediate possession and to commence the construction of a state highway and public thoroughfare as aforesaid * * *." (Emphasis supplied.)

9. Thus Eden's attorney, Nelson Rosen, told the court:
"* * * I agree with the court that * * * title thereto has been administratively vested in the Government of the United States, subject only to being divested upon a final judgment in this case. * * * We are not seeking to interfere with the title. * * *"
Likewise, Rosen's co-counsel, Raymond, W. Sandler, told the court:

"* * * We recognize, and Judge Files [superior court judge] has recognized in the course of that proceeding that at least prima facie title, as the court put it, passed to the Federal Government upon the filing of the declaration of possession."

10. The court said: "But I am not going to allow the plaintiff or anyone else under the guise of litigation, estopped by broad allegations in a document in the state court, from performing functions that can only be performed by the Government through certain particular agencies."

11. The Government seems to back away from this contention in its brief filed in this court, preferring to rest the claim of interference with the Government ownership upon the close cooperation between the United States and the states envisioned by the Federal-Aid Highways Act "regardless of agency law."

107 agreements, and not because of any right acquired by the Government in the condemnation proceeding itself.

Moreover, analysis of the Federal-Aid Highways Act indicates that while close cooperation between the United States and the individual states was contemplated, the states or their agencies or officials were in no sense to become agents of the United States in projects authorized by that act. The whole tenor of the act is that the United States stands ready to assist the states when, under stated conditions, the states seek such assistance. Section 107 agreements are intended to confirm this arrangement, but not to create a principal and agent relationship in either direction.[12]

If, by reason of any judgment entered in the state action, the state is unable to fulfill its obligations under such contract or contracts, the United States, which is not a party to, and not bound by, the state adjudication, has its remedy in a separate court proceeding. But this condemnation proceeding, in which the state is not even a party, is not the place to litigate any such contractual rights.

We therefore conclude that the order staying state court proceedings with respect to a temporary restraining order or permanent injunction is no more warranted by the second factor relied upon by the court than by the first factor discussed above.

Eden has asked us not only to decide this appeal on the merits—which we have done—but also to "decide the underlying question as to the validity of the condemnation proceeding. * * *" In its brief the Government states: "We join with appellant in urging this Court to put an end to the entire controversy at the present time. * * *"

■■ In condemnation proceedings, appellate review as to the validity of the taking may ordinarily be had only upon an appeal from the final order or judgment disposing of the whole case. Rule 71A(e), Federal Rules of Civil Procedure, 28 U.S.C.A.; Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911. Where, however, such a proceeding is before us to review an interlocutory order, we may review the validity of the taking if that question is ripe for review and if such review is necessary to dispose of the interlocutory appeal. But here we have already determined, for independently sufficient reasons, that the interlocutory order staying and enjoining state proceedings must be reversed.

It is true that a present review as to the validity of the taking might expedite termination of the entire controversy in both its state and federal aspects. This would happen, however, only if such review resulted in an adjudication that the taking was invalid, or that it was valid and, by its own force, required the state to accept the land and construct a highway thereon. We have already held that the latter question cannot be determined in this condemnation proceeding.

■ In our opinion the prospect of expediting the disposition of litigation is not a sufficient end in itself to warrant advance consideration of issues which are normally reserved for disposition on final appeal. In this case, moreover, there are other considerations which argue against the unnecessary advance review of the question of validity.

Under the Federal-Aid Highways Act, which provides the statutory authority for this taking, the only purpose for which the land may be acquired is to transfer it to the state so that the state can construct and maintain a highway thereon. If, by reason of the decision in the pending state case a cloud is thrown over the authority and obligation of the state to accept such a transfer and so utilize the land, the United States may desire to know it before the taking be-

---

12. The fact that the Federal Government renders financial assistance to a state in connection with the performance of its governmental duties does not bring an agency relationship into existence. See Harris v. Boreham and United States, 3 Cir., 233 F.2d 110.

comes irrevocable, assuming that it has not already become so.

Apart from the possible desire of the United States in this regard, the district court might itself desire to re-examine its determination as to validity in the light of any such state adjudication. If, for its own purposes, or to accommodate the United States, the district court should determine to postpone the entry of a final decree in the condemnation proceeding pending such state adjudication, this would be an altogether proper exercise of judicial discretion.

We cannot perceive how anything will be gained by perfecting title in the United States unless and until California's ability and obligation to accept a transfer of the land and utilize it for the intended purposes, has been authoritatively determined. It need only be added that it is the pendency of the state action, and not this condemnation proceeding, which has occasioned any delay so far experienced, or which will be the cause of any further delay in completing this highway project.

The order under review is reversed and the cause is remanded with directions to vacate such order.