**UNITED STATES of America, Plaintiff–Appellee,**

v.

**SID–MARS RESTAURANT & LOUNGE, INC., Defendant–Appellant.**

No. 09–30869.

United States Court of Appeals, Fifth Circuit.

Aug. 29, 2011.

John Emad Arbab (argued), Environment & Natural Resources Div., U.S.

Dept. of Justice, Washington, DC, Glenn Kenneth Schreiber, Asst. U.S. Atty., New Orleans, LA, for Plaintiff–Appellee.

Barry W. Ashe (argued), Kathryn Marie Knight, Stone Pigman Walther Wittmann, L.L.C., Charles Louis Stern, Jr., Steeg Law Firm, L.L.C., New Orleans, LA, for Defendant–Appellant.

Before DENNIS, OWEN and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

No member of the panel nor judge in regular active service of the court requested the court be polled on rehearing en banc. The petition for rehearing en banc is DENIED. *See* 5th Cir. R. 35. Treating that petition as a petition for panel rehearing, the panel DENIES the petition but supplements the discussion of *Alonzo v. United States*, 249 F.2d 189 (10th Cir. 1957). *See United States v. Sid–Mars*, 644 F.3d 270, 279 (5th Cir.2011).

Though the United States had not yet condemned and obtained title to the land at issue here at the time that the state court suit commenced, the United States' interest was certain enough to allow an injunction. The government's interest in and possession of this property, and its stated intent to acquire title to that property, predated the Sid–Mar's state court lawsuit. Indeed, Sid–Mar's dismay about the slow pace following the commandeering is what led to its responding with its own suit in state court. The government had the right to possess the land as a result of the commandeering before the state suit commenced. The Supreme Court identified the claimant's lack of possession in *Bank of New York* as a factor weighing against allowing an injunction in that case. *See Leiter Minerals, Inc. v. United States*, 352 U.S. 220, 227, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957). The opposite is true here. The government's possession derived from a cooperation agreement with Louisiana.

It is the aggregation of these factors, and not merely a possible future interest, that comprise the United States' property interest.

One circuit court, applying *Leiter Minerals*, has allowed the government to enjoin state court litigation involving a piece of property because the government had the right to prevent the Indian tribe that owned the property at issue from alienating it. *See Alonzo v. United States*, 249 F.2d 189, 196–97 (10th Cir.1957). At the very least, the uncertainty surrounding the ownership of the property Sid–Mar's claims and the existence of some interest by the United States supports enjoining the state court litigation. Indeed, the foundational "certainty" upon which the Supreme Court ruled when deciding *Leiter Minerals* was that the "suit in federal court was the only one that could finally decide the basic issue in the litigation" and would foreclose confusing, inconsistent judgments. *Leiter Minerals*, 352 U.S. at 226–27, 77 S.Ct. 287. Before the Court distinguished its facts from those in *Bank of New York*, it identified this principle as a basis for its decision. *See id.* Our decision advances this rationale by ensuring the state court suit will not conflict with a later-in-time federal judgment.

DENNIS, Circuit Judge, dissenting:

I continue to dissent for the reasons assigned in my earlier dissenting opinion, *see United States v. Sid–Mars Restaurant & Lounge, Inc.*, 644 F.3d 270, 280–96 (5th

Cir.2011) (Dennis, J., dissenting), but add the following remarks in response to the panel majority's supplemental discussion.

This is a condemnation action by the Government to acquire title to land in Louisiana from its present owners. This is not an action by the Government to obtain possession to the land or to quiet a preexisting title to the property. No evidence has been taken and no decision has been rendered by the district court on whether the Government has possession of the particular land claimed to be owned by Sid–Mar's. Therefore, the majority opinion's assertion that the Government has lawful possession of the property in question is unfounded in the record of this case. Assuming for the sake of argument that the Government has obtained lawful possession of the particular property from the State of Louisiana, however, that does not relieve the federal courts of their obligation to honor and defer to the previously filed in rem proceeding involving the same property in state court under the prior exclusive jurisdiction doctrine. Sid–Mar's inverse condemnation action under the state constitution and laws accrued at the moment the State of Louisiana's Governor commandeered and seized the land in question and ousted Sid–Mar's from their property. Sid–Mar's timely and diligently brought its in rem inverse condemnation suit in state court based on the state's commandeering of the land. Therefore, under the ancient prior exclusive jurisdiction doctrine, the federal district court is required to stay its proceeding and refrain from interfering with Sid–Mar's in rem inverse condemnation state court action. The fact that the Government may have obtained possession of or a right of entry to parts of Sid–Mar's land after the accrual of Sid–Mar's state-law inverse condemnation action does not create an exception to the doctrine in this case. The only exception to the doctrine that has been recog-

nized by the Supreme Court is the exceptional situation in *Leiter Minerals, Inc. v. United States,* 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957), in which the Government was allowed to bring a federal court action to quiet its preexisting title to its valuable oil and gas mineral estate because the United States' title thereto had been challenged by claimants in state court. The present case does not fall within the special situation of the *Leiter Minerals* case because here the Government is not asserting or attempting to quiet a previously acquired title to the property in a defensive manner; instead, it is offensively seeking to acquire title to the property for the first time.

Further, the majority contends that "[t]he government's interest in and possession of this property, and its stated intent to acquire title to that property, predated the Sid–Mar's state court lawsuit" and that the government's "interest was certain enough to allow an injunction." However, the majority never specifies what exactly the government's interest was prior to its filing of the present condemnation suit. The majority suggests that it may be that the government had "possession" of the land; however, the record is entirely unclear about whether the government in fact possessed the land. All the record reveals is that the Governor's commandeering order declared that "the Division of Administration, State Land Office, shall take immediate steps to grant right of entry to the property commandeered ... pursuant to this order." (R. at 181); *see also* Sid–Mar's Br. 14 ("[S]ince February 10, 2006, the subject property has been in the hands of the State of Louisiana.... In or around March 2006, the Corps entered the property pursuant to the State-provided right of entry...."). As I explained in my earlier opinion, the government's mere right to enter the land—or, as

the majority would have it, the government's "right to possess the land as a result of the commandeering" and "its stated intent to acquire title"—is "no more of a legal interest than it might have in any property in the nation." *Sid–Mars*, 644 F.3d at 293 (Dennis, J., dissenting). Thus, the government's interest in the property before Sid–Mar's state suit was filed was inadequate to bring this case under the "narrow exception" created by *Leiter Minerals*. *Id.* at 293–94.

Even if the government somehow "possessed" the land before Sid–Mar's commenced their state court suit, that fact would not bring this case within an exception to the prior exclusive jurisdiction doctrine created by *Leiter Minerals*. See *United States v. One 1979 Chevrolet C–20 Van*, 924 F.2d 120, 123 (7th Cir.1991) ("At the time the complaint was filed in federal district court, the state forfeiture action was pending and the state court had jurisdiction over the van to the exclusion of the federal court. The fact that the federal authorities muscled in on the van and began an administrative forfeiture proceeding before the state court action was filed did not confer jurisdiction on the federal court. We stated in [*United States v. $79,123.49 in United States Cash & Currency*, 830 F.2d 94, 98 (7th Cir.1987)], and maintain here as well, that jurisdiction obtained by mere possession 'goes much too far.' "); *United States v. One 1985 Cadillac Seville*, 866 F.2d 1142, 1146 (9th Cir. 1989) ("[W]e reject, as did the Seventh Circuit, the argument that the fact of federal possession of the res takes jurisdiction from the state court and bestows it upon the district court. Although we are familiar with the maxim, 'possession is nine-tenths of the law,' we prefer to apply the remaining one-tenth and decline to 'substitute a rule of force for the principle of mutual respect embodied in the prior exclusive jurisdiction doctrine.' The district

court must decline federal jurisdiction over money taken from the state court's jurisdiction in such a manner." (citations omitted) (quoting *$79,123.49*, 830 F.2d at 98)); *$79,123.49*, 830 F.2d at 97–98 ("Since the earliest days of the Republic the rule has been established that, when state and federal courts each proceed against the same res, the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other.... [The rule's] subsequent invocation in [inter alia] ... *United States v. Bank of New York & Trust Co.*, 296 U.S. 463, 56 S.Ct. 343, 80 L.Ed. 331 (1936), ... confirms the rule's modern-day vitality.... The United States argues ... that the district court had jurisdiction by virtue of the federal government's possession of the property. This argument goes much too far. Possession obtained through an invalid seizure neither strips the first court of jurisdiction nor vests it in the second. To hold otherwise would substitute a rule of force for the principle of mutual respect embodied in the prior exclusive jurisdiction doctrine." (citation omitted)). Sid–Mar's right to compensation for the taking accrued at the moment of the commandeering, and therefore preceded any possessory interest of the Government. Furthermore, the *Leiter Minerals* exception depends on the United States having a pre-existing right of title allowing it to bring an action to quiet its title in a defensive manner in federal court, and not just possession of the property. *See Leiter Minerals*, 352 U.S. at 227–28, 77 S.Ct. 287 ("In this case, a private party is seeking by a state proceeding to obtain property currently in the hands of persons *holding under the United States;* the United States is seeking to protect that possession *and quiet title* by a federal court proceeding. Therefore, ... the position of the United States is essentially a *defensive*

one...." (emphasis added)). Here, as I repeatedly stressed in my earlier opinion, the United States did not have a preexisting title to the property; has not brought a defensive action to quiet its title; and instead, it is suing offensively to acquire title to property for the first time. Accordingly, it is clear that possession alone does not bring this case within the exception identified in *Leiter Minerals*.

The majority mistakenly relies on the distinction of *United States v. Bank of New York & Trust Co.*, 296 U.S. 463, 56 S.Ct. 343, 80 L.Ed. 331 (1936), drawn in *Leiter Minerals* for the apparent proposition that the alleged but questionable prior possession of land by the United States trumps the prior exclusive jurisdiction doctrine and a state in rem action involving the same res filed previously to this federal court condemnation action. As the Court in *Leiter Minerals* observed: In *Bank of New York*, "in a federal district court proceeding, the United States was claiming by assignment certain funds of three Russian insurance companies that were being held in the custody of a state court, in connection with the liquidation of the companies, subject to court orders concerning distribution to claimants under the state insurance laws. On the basis of this claim, the United States sought to enjoin distribution of the funds and to require payment of them to it. This Court, affirming dismissal of the complaints and denial of the injunction, held that the state court had obtained jurisdiction over the funds first and that the litigation should be resolved in that court. The Court also noted that there were numerous other claimants, indispensable parties, who had not been made parties to the federal court suit. In remitting the United States to the state court, the Court saw no 'impairment of any rights' of the United States or 'any sacrifice of its proper dignity as a sovereign.'" *Leiter Minerals*, 352 U.S. at 227, 77 S.Ct. 287 (quoting *Bank of New York*, 296 U.S. at 480–81, 56 S.Ct. 343). Thus, *Leiter Minerals* did not distinguish *Bank of New York* from the present case as the majority contends. Here, the state's commandeering of Sid–Mar's private property vested Sid–Mar's immediately with a right under Louisiana constitutional and statutory provisions to inverse condemnation and compensation for the land taken. Sid–Mar's suit for this relief was filed in the state court prior to the Government's commencement of this federal condemnation action thereby giving the state court in rem jurisdiction over the property as of the time of its taking. The present federal condemnation suit was filed in the district court subsequently to the state's taking and Sid–Mar's filing of its state court in rem inverse condemnation action. Consequently, under the prior exclusive jurisdiction doctrine, the federal courts cannot interfere with or defeat Sid–Mar's rights against the State of Louisiana asserted in the state court action, even if the state has transferred a form of possession or right of entry to the property to the Corps of Engineers, or any other third person. Further, it is self evident that possession of the property by an executive branch agency of the federal government is not equivalent to a federal court having jurisdiction over the property for purposes of the prior exclusive jurisdiction doctrine. *See One 1979 Chevrolet C–20 Van*, 924 F.2d at 123; *One 1985 Cadillac Seville*, 866 F.2d at 1146; *$79,123.49*, 830 F.2d at 98.

The majority is further mistaken that "the foundational 'certainty' upon which the Supreme Court ruled when deciding *Leiter Minerals* was that 'the suit in federal court was the only one that could finally decide the basic issue in the litigation' and would foreclose confusing, inconsistent judgments," and thus, allowing the injunc-

tion here "advances this rationale by ensuring the state court suit will not conflict with a later-in-time federal judgment." The reason the *Leiter Minerals* Court said the federal court was the only one that could decide the basic issue was that it was the United States' preexisting land and minerals title that was the issue; and it was well settled that the state court did not have jurisdiction to decide a quiet title action by the Government or bind the Government by a judgment against its agents. *Leiter Minerals,* 352 U.S. at 226, 77 S.Ct. 287 ("The United States was not a party to the state suit and, under settled principles, title to land in possession of the United States under a claim of interest cannot be tried as against the United States by a suit against persons holding under the authority of the United States." (citing *United States v. Lee,* 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171 (1882))). Further, the exceptional situation in the *Leiter Minerals* case, of course, consisted of several factors and did not depend on that as a single or exclusive "foundation." At bottom, the majority's argument is based on the assumption that the prior exclusive jurisdiction principle must yield to the United States' right to condemn property in an action in federal court regardless of a preexisting state court condemnation suit between other parties over the same property if the state and federal cases could reach conflicting results. In effect, the argument is that the prior exclusive jurisdiction principle does not apply to the United States as a litigant, which simply flies in the face of a compendium of authorities including Supreme Court cases to the contrary, which I cited in my earlier opinion.

*Alonzo v. United States,* 249 F.2d 189 (10th Cir.1957), continues to be inapposite and of no help to the majority's position for the reasons assigned in my previous dissenting opinion.

The majority's original opinion suggests that the district court could avoid inconsistent results between it and the state courts by "lift[ing] the stay for the limited purpose of allowing the state court to determine title." 644 F.3d at 280. I certainly agree that the district court can and should pursue this course, but not merely to have the state courts determine only the issue of title to the property at the time of its taking. Instead, the district court should defer to the previously filed state court action until it completely adjudicates title, compensation for the land taken, and all other elements of the inverse condemnation suit. In my view, the doctrine of prior exclusive jurisdiction rules out the majority's other suggested alternatives.

For these reasons, I respectfully continue to dissent.